IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor, | ) ) ) ) | |
| Secretary, | ) ) ) | |
| v. | ) ) | Case No. 2:14-cv-0115 |
| EYE CENTERS OF TENNESSEE, LLC; LARRY E. PATTERSON, M.D., an individual; RAYMOND K. MAYS, an individual; and the EYE CENTERS OF TENNESSEE 401 (k) PROFIT SHARING PLAN; | ) ) ) ) | Chief Judge Sharp |
| Defendants. | | |

## MEMORANDUM

This action arises under the Employee Retirement Income Security Act of 1975 ("ERISA"), 29 U.S.C §§ 1104 and 1106. The Secretary Thomas E. Perez, Secretary of Labor for the United States Department of Labor ("Secretary") brings this action against Eye Centers of Tennessee ("ECOTN"), Larry E. Patterson, M.D. ("Patterson"), Raymond K. Mays ("Mays"), and the Eye Centers of Tennessee 401(k) Profit Sharing Plan ("the Plan") (collectively, Defendants) for ERISA violations. Secretary filed a Partial Motion for Summary Judgment, to which Defendants responded in opposition, and Secretary replied. This Court will grant Secretary's Motion.

## BACKGROUND

The Secretary asserts, and Defendants do not dispute, that the following parties and/or entities are "parties in interest." This is important because ERISA prohibits certain transactions involving "parties in interest." ECOTN is an ophthalmology practice based in Crossville,

1

Tennessee with offices in other locations. Patterson is the majority owner of ECOTN and Mays is the Office Administrator who "runs everything that has to do with the business side of the practice." (Docket No. 52-4 at 19). "The Plan" is an employee benefit plan within the meaning §3(3) of ERISA, 29 U.S.C. §1002(3), and is subject to coverage under ERISA pursuant to §4(a), 29 U.S.C. §1003(a). ECOTN is the Plan sponsor and Employer.

The Plan is a contribution based pension plan that permits discretionary profit sharing contributions to be made by ECOTN. The named fiduciaries of the Plan are ECOTN, Patterson, and Mays who are also "part[ies] in interest" (Docket No. 53-1 at 4-5) to the Plan within the meaning of ERISA §3(14)(A) and (C), 29 U.S.C. §1002(14)(A) and (C). Patterson and Mays also serve as the Plan trustees.

Defendants had access to ECOTN's and the Plan's records including Mays who had discretion to manage the Plan's assets. The Plan allowed participants, through payroll deductions, to contribute a portion of their paycheck to the Plan. Employee contributions are (or were) deducted from compensation each bi-weekly pay period. While it is disputed how often Mays had knowledge of when employee contributions were remitted to the Plan (i.e. "during all relevant times" or not) (Docket No. 53-1 at 6), it is undisputed that he was aware that remittances occurred. Additionally, the Plan's Safe Harbor Nonelective Contribution Plan requires that ECOTN make payments to the Plan no later than the date it filed its tax returns for the year in which the contributions occurred. The parties dispute whether ECOTN paid its employer safe harbor contributions in 2007 through 2012.

It is undisputed that Plan assets were transferred to Maple Leaf Developments, LLC ("MLD") and that Mays and Patterson are (or were) the majority owners of MLD, a "party in interest" to the Plan (Docket No. 53-1 at 8) within the meaning of ERISA § 3(14)(G), 29 U.S.C.

§1002(14)(G). Between February 5, 2007 until August 17, 2012, "Mays transferred Plan assets totaling $782,250 to MLD by writing checks from the Plan account and depositing each check into MLD's account by authorizing the check with his signature." (Docket No. 52-1 at 10; Docket No. 53-1 at 9). "Mays and Patterson did not document the Plan's ownership interest in property owned by MLD." (Docket No. 53-1 at 11). The parties dispute whether Mays and Patterson restored the money transferred to MLD or the lost opportunity costs to the Plan.

Mays and Patterson also transferred assets totaling $50,000 from the Plan to ECOTN without "document[ing] loan terms, secur[ing] a promissory note, requir[ing] collateral, or document[ing] a repayment schedule" (Docket No. 53-1 at 12) in an attempt to use Plan funds to pay for operations. Accountants for Defendants even credited particular payments made from ECOTN to the Plan toward the $50,000 transfer in an apparent attempt to benefit Defendants. The parties dispute the Plan's lost opportunity costs arising from this transfer.

Mays, undisputedly, is (or was) the majority owner of Park Street Properties, LLC ("PSP"), which is also a "party in interest" to the Plan. (Docket No. 53-1 at 13). Between January 28, 2005 and June 19, 2012, Mays made payments from the Plan totaling $344,225.39 to PSP. Mays authorized each check with his signature. The parties dispute whether these payments were for the sole advantage of PSP or to reimburse expenses incurred for the benefit of the Plan properties. The Secretary asserts that Defendants "did not provide evidence demonstrating that PSP has or ever had employees, nor did they produce receipts or invoices for the payments that the Plan made to PSP." (Docket No. 53-1 at 15). The parties dispute whether Mays and Patterson restored this money withdrawn from the Plan's account or the lost opportunity costs to the Plan associated with this withdrawal.

3

From January 2, 2008 through December 31, 2010, Charles Daren Mays ("Daren Mays"), brother of Mays, was an employee of ECOTN and a participant in the Plan. It is undisputed that, during this time, he was a "party in interest" (Docket No. 53-1 at 17). Daren Mays owned "Upper Cumberland Building Consultants, LLC" ("UCBC"). Id. The Plan used UCBC services to improve its properties while Daren Mays was an employee of ECOTN. It is undisputed that Mays acted for the Plan in hiring his brother Daren Mays. Id. From March 14, 2008 to November 10, 2010 Mays caused the Plan, by writing and signing checks, to pay UCBC $17,077.24. At times, Mays and Patterson paid UCBC directly from the PSP account. The Secretary also asserts that some of the invoices for UCBC services "did not have a description of the services for the corresponding charge." (Docket No. 53-1 at 19).

In October 2006, the Plan purchased commercial property known as "the Lantana Road Property" for $285,000. Prior to purchasing this property, Mays discussed with Patterson that the Mays family would rent it to operate a gym. From around January 2008 to the present date, the Plan has rented the Lantana Road Property, which is 8,563 square feet, to The Pit Barbell Club ("The Pit"), a workout facility, for $5,000 a year. Mays acted on behalf of The Pit "in entering [this] lease agreement" (Docket No. 53-1 at 21). "[He also] has signatory authority on The Pit's checking account, writes all of the checks associated with The Pit's business, endorses the checks, and deposits them in the Plan's accounts, makes rental payments to the Plan, and signs tax return documents as President of the Pit." (Docket No. 53-1 at 21). It is undisputed that Kiersten Mays, wife of Mays and also a "party in interest" owns all of the outstanding shares of The Pit. Id. The Pit made only one payment to the Plan in 2008 for $1,200 and made no other payments again until 2010 when it paid $6,000. The next payment was made in February 2013 for $5,000 and then in 2014 it paid $11,750,00 and again in 2015 paid $5,000, totaling $28,950

4

to the Plan compared with the $45,000 to the Plan it should have paid at a lease rate of $5,000 annually since January 2008. No late penalties were collected from The Pit; no delinquent rent requests were made; and the Trustees never attempted to evict The Pit during the years it did not make payments. Rather, the Plan paid mortgage payments of $31,422.96, annually, on the Lantana Road Property. The Pit's lease rate of $5,000 per year was around one-sixth of the Plan's $2,618.58 monthly mortgage payment on the Lantana Road Property.

In December 2009, Lucretia Medlin ("Medlin"), a former ECOTN employee and Plan participant, requested Mays stop her employee contributions from her paychecks to the Plan. In October 2012, she "requested a distribution from the Plan in the form of a rollover of her assets to another plan sponsored by her new employer." (Docket No. 53-1 at 26). After not receiving it, she complained to the Employee Benefits Security Administration ("EBSA") in January 2013. She later received her distribution in February 2013.

## **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" Blizzard v. Marion Tech. Coll., 698 F.3d 275, 282 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). "Reviewing the facts in the light most favorable to the nonmoving party, the court must ultimately determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Blizzard, 698 F.3d at 282 (internal citations and quotations omitted). The movant "must show that the record contains evidence satisfying the burden of persuasion

and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." Arnett v. Myers, 281 F.3d 552, 561 (6th Cir. 2002) (citation omitted). Summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." Hunt v. Cromartie, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I. Liability**

Because Defendants transferred Plan assets to "parties in interest", ECOTN, MLD, PSP, UCBC, and Mays' family through The Pit, the Secretary moves for partial summary judgment on these transfers, as *per se* violations, raising a number of claims under ERISA. Defendants do not dispute putting Plan funds into assets owned and controlled by these "parties in interest." Instead, they assert a good faith defense. Essentially, Defendants challenge the Secretary's assertion that violating ERISA § 406(a)(1)(D) is a *per se* violation.[1]

Under ERISA § 406(a) [29 U.S.C. § 1106(a)] certain types of transactions between a plan and a "party in interest" are prohibited. Jordan v. Michigan Conf. of Teamsters Welfare Fund, 207 F.3d 854, 858 (6th Cir.) More specifically, and with exceptions not relevant here:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.

---

[1] "Defendants [put forth that they] would dispute Secretary's [other claims]" (Docket No. 53 at 3) involving the "alleged failure to remit employee contributions to the Plan on a timely basis, the alleged failure to make employer contributions when due [under the Safe Harbor Nonelective Contribution Plan requirement], and the alleged failure to make a timely payout to a Plan participant [Medlin] in accordance with Plan documents" however, the "amounts at issue are too small to justify the expense of a full response." Id.

6

29 U.S.C. § 1106(a)(1)(D). "Congress adopted § 406 to prevent employee benefit plans from engaging in transactions that would benefit "parties in interest" at the expense of plan participants and their beneficiaries." Jordan 207 F.3d at 858; see Chao v. Hall Holding Co., 285 F.3d 415, 424–25 (6th Cir. 2002) ("The purpose of § 406(a) is to prohibit transactions that would clearly injure [a] plan.") (citation and quotation marks omitted).

In responding to the Secretary's claim that Defendants violated § 406(a)(1)(D) by committing these transfers, Defendants assert that to find a § 406(a)(1)(D) ERISA violation requires that "a [party have] subjective intent to benefit a party in interest", (Docket No. 53 at 4). Defendants cite to the Sixth Circuit's decision in Jordan[2] for support. However, as the Secretary correctly points out, the court in Jordan was primarily concerned with the consequences of restricting a union (the "party in interest") from collecting attorney's fees after it assisted plan participants in regaining losses. The court explained that allowing this restriction would cut "against the very core of what § 406 seeks to prevent." Id. at 860. The court preserv[ed] § 406's status as a *per se* violation while "narrow[ing] construction [to] provide[] flexibility" in order to find "that the drafters of § 406 did not intend to view the [payment of attorney's fees to the union] as a prohibited transaction." Id. at 859 ("[t]his Court, as well as others, have noted . . . §

---

[2] As both parties point out, in Chao, a different panel of the Sixth Circuit called into question the Jordan holding. However, "A panel of [the Sixth Circuit] cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting *en banc* overrules the prior decision." Salmi v. Sec'y of Health & Human Servs., 774 F.2d 685, 689 (6th Cir. 1985) (citation omitted). Therefore, Jordan is still controlling authority.

7

406(a) characterizes *per se* violations . . . ." See also Chao 285 F.3d at 439 ("Basically, in creating § 406(a), Congress intended to create a category of *per se* violations.").[3]

Defendants assertions that they acted to benefit the Plan are unavailing. "Lack of harm to the plan or the good faith or lack of the same on the part of the borrower are not relevant, and certainly not controlling, under ERISA § 406. Rather, Congress was concerned in ERISA [§ 406] to prevent transactions which offered a high potential for loss of plan assets or for insider abuse[.]" Id.

The Secretary claims that through PSP (owned by Mays) and UCBC (owned by Mays' brother Daren Mays, Defendants committed a §406(a)(1)(C) violation, 29 U.S.C. § 1106(a)(1)(C) ("furnishing of goods, services, or facilities between the plan and a party in interest") and that Defendants engaged in self-dealing with PSP in violation of §406(b)(1) and (b)(2). ERISA § 406(b)(1) restricts using assets to benefit fiduciaries interests and §406(b)(2) prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C § 1106(b)(1) and (2). Defendants seem to combine their response to these allegations by claiming that these transactions are exempt under 29 U.S.C. § 1108.

Mays made payments totaling $344,225.39 to PSP and $17,077.24 to UCBC (while Daren Mays was employed at ECOTN). Mays was the owner of PSP and acted on its behalf during the time all payments were made to it from the Plan. Defendants assert that §408(c)(2)'s

---

[3] Defendants also cite to a decision from the Eastern District of Michigan as additional support, which again dealt with the payment of attorney's fees using plan funds. However, this decision was grounded in the §408(b)(2) exemption to §406. In following Jordan, the court held that prohibited transactions with a "party in interest" under ERISA did not "prevent a plan from '[c]ontracting or making *reasonable* arrangements with a party in interest for ... legal ... services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor. 29 U.S.C. § 1108(b)(2)." In re Iron Workers Local 25 Pension Fund, 811 F. Supp. 2d 1295, 1320 (E.D. Mich. 2011) (emphasis added).

exemption applies to Daren Mays and PSP, making legally permissible their compensation to these "parties in interest" from the Plan. However, they are incorrect because the exemption "prohibits . . . fiduciar[ies]", not "parties in interest", rendering this exemption inapplicable because it is undisputed that PSP and Daren Mays are "parties in interest." 29 U.S.C. §1108(c)(2); Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan, 751 F.3d 740, 751 (6th Cir.), cert. denied, 135 S. Ct. 404, 190 L. Ed. 2d 291 (2014) ("We decline [defendant's] invitation to apply the reasonable compensation provisions found in §§ 1108(b)(2) and (c)(2) to the *self-dealing* restriction in § 1106(b)(1) (emphasis added)). See Chao v. Magic P.I. & Sec., Inc., No. 1:04CV205, 2007 WL 689987, at *5 (W.D. Mich. Mar. 2, 2007) ( "By acting on behalf of himself and Magic P.I., defendant Magett took positions that were adverse to the Plan's interest in violation of ERISA sections 406(b)(1) and (2). 29 U.S.C. § 1106(b)(1), (2)[]").

Section 408(b)(2) allows for an exemption to §406 when "contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or the operation of the [P]lan, if no more than reasonable compensation is paid therefor." 29 U.S.C. §1108(b)(2). As the Secretary points out, however, this exemption only applies to prohibited transactions under §406(a). It does *not* exempt violations of self-dealing under §406(b)(1) or (2). 29 C.F.R. § 2550.408(b)(2)(a). Even more, as the Secretary points out, ERISA contains an "absolute bar against self dealing." Brock v. Hendershott, 840 F.2d 339, 341 (6th Cir.1988). Defendants claim, without any legal citation, that "where all the fiduciary has done is to pay legitimate Plan expenses to independent third parties, no self-dealing has occurred and §1106(b) is not implicated." (Docket No. 53 at 8). However, by Defendants' own admission, PSP is not a third party, but rather it is Mays' company and received funds from the Plan, a blatant form of self dealing.

The Court now turns to payments made to Daren Mays for services by UCBC which the Secretary claims are not exempt. Section 408 (b)(2) requires "reasonable compensation" in order to show that these payments qualify for exemption. If the contract for these services is to be reasonable, the service provider must disclose pertinent information in writing such as "[a] description of the services to be provided to the covered plan" and [a] "description of all direct compensation." 29. C.F.R. §2550.408(c)(1)(iv)(A) and (C).

Defendants have not shown that they have met this reasonableness requirement. Mays, acting on behalf of the Plan, did not create a written agreement with UCBC at the inception of the relationship, which overlapped with Daren Mays' employment at ECOTN between 2008 and 2010. Moreover, Defendants offer over 1,400 pages of exhibits (supplied after the deposition deadline) that are purportedly "receipts and invoices" that "confirm[] . . . payments made by the Plan to UCBC." (Docket No. 53 at 7). Defendants seem to want the Court to scour through over a thousand pages to find invoices that overlap with the 2008-2010 time period and determine whether they properly serve as a "reasonable" description of services and/or descriptions of direct compensation. But this the Court will not do. See Guarino v. Brookfield Twp. Trustees, 980 F.2d 399, 410 (6th Cir. 1992) ("Neither the trial nor appellate court, however, will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party"). The Secretary contends, and Defendants do not really dispute, that these exhibits only show around five pages of receipts from 2008-2010. Defendants, therefore, fail at showing the Court that their payments to UCBC from Plan funds were reasonable.

Defendants do not respond to the Secretary's allegation that they also violated ERISA §404(a)(1)(A) and (B), which provide that:

> A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan; [and] [W]ith the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in a conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104 (a)(1)(A) and (B). Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Michigan, 722 F.3d 861, 868 (6th Cir. 2013) ("[defendant] "blatantly violated [§§ 1104(a)] by using [p]lan assets—money from the employers and the covered employees—for its own purposes." (citation omitted); Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc., 689 F.3d 793, 798 (6th Cir. 2012) ("ERISA requires fiduciaries to act 'solely in the interest of the [Plan] participants and beneficiaries. . . . '"). [4]

## II. Damages

ERISA § 409(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter

---

[4] The Court recognizes that, as part of their response to the Motion for Summary Judgment, Defendants filed a Renewed Motion for Stay of Proceeding based upon the fact that Mays was subject to parallel criminal charges. A prior stay request was denied by Magistrate Judge Brown on February 19, 2016, after Mays' pled guilty to those charges. "[T]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket . . . [and] "[t]here is no requirement that a civil proceeding be stayed pending the outcome of criminal proceedings." F.T.C. v. E.M.A. Nationwide, Inc., 767 F.3d 611, 626–27 (6th Cir. 2014) (listing certain factors District Courts consider in determining whether a stay of civil proceedings is appropriate). Here, Defendants have not established the need for a stay. Quite the contrary, the record suggests that Mays has already been sentenced and thus, there are fewer reasons for a stay than when Magistrate Judge Brown initially denied the request.

The Court also notes that the Secretary asks the Court to draw an adverse inference because, during the course of his deposition, Mays invoked the Fifth Amendment. There is no need to draw any such inference because Defendants concede the material facts that serve as the basis for this Court's decision.

> shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a). Defendants seem to aver that because there were no financial losses to the Plan, they should not be held liable under ERISA. However, "[A] fiduciary's liability [under ERISA] is not limited to plan 'losses. . . .'" Tullis v. UMB Bank, N.A., 515 F.3d 673, 679 (6th Cir. 2008) (citation omitted).

The parties dispute how to calculate the damages. However, the Secretary did not ask this Court for summary judgment as to the amount of losses for which Defendants are liable for causing the Plan to rent the Lantana Road Property to "Mays and his wife for less than fair market value." (Docket No 52-1). The matter of losses will be considered at the scheduled bench trial on December 13, 2016.

**Injunctive Relief**

The Secretary asks this Court to permanently enjoin Defendants from "1) administering or providing services to an ERISA-covered plan" and also asks this Court "to appoint an independent fiduciary at Defendants' expense to administer the Plan." (Docket No. 52-1 at 23). Defendants agree to no longer serve as fiduciaries for this Plan or any other ERISA-covered Plan in the future. Defendants only ask that the appointment of an independent fiduciary be deferred until the old Plan is eliminated. This decision will be made at trial.

## CONCLUSION

On the basis of the foregoing, the Secretary's Partial Motion for Summary Judgment will be granted on the issue of liability for Defendants' violations of ERISA, §§ 404 (a)(1)(A) and

(B), 406(a)(1)(C) and (D), and 406(b)(1) and (2), based on their admitted transfer of Plan assets to "parties in interest." Defendants Renewed Motion for Stay of Proceedings is denied.

A separate Order shall follow.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT