UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| R. ALEXANDER ACOSTA, ) <br> Secretary of Labor, ) <br> United States Department of Labor, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EYE CENTERS OF TENNESSEE, LLC; ) <br> LARRY E. PATTERSON, M.D., an individual; ) <br> RAYMOND K. MAYS, an individual; and the ) <br> EYE CENTERS OF TENNESSEE 401(k) ) <br> PROFIT SHARING PLAN, ) <br> ) <br> Defendants. ) | Case No. 2:14-cv-0115 <br> Judge Crenshaw <br> Magistrate Judge Brown |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION IN LIMINE
TO EXCLUDE THE TESTIMONY OF DAN HODGES AND
RICK JONES AND RELATED DOCUMENTS**

The Secretary's Motion in Limine seeks to exclude witnesses Dan Hodges and Rick Jones, along with documents relating to their investigation, for three reasons: (1) the evidence relates only to issues of liability, on which the Court has already ruled; (2) Hodges and Jones do not have firsthand knowledge of the facts of this case; and (3) Ray Mays could not verify the records obtained from Upper Cumberland, and some of the receipts were for expenses unrelated to the Plan. (Doc. 79). None of these claims are accurate, and none provides legally sufficient grounds to exclude the challenged evidence. The motion should therefore be denied.

**Factual Background**

As set forth in the Declarations of Dan Hodges and Rick Jones (Doc. Nos. 53-6 and 53-7), one of the allegations against Defendant Ray Mays during his corresponding criminal proceeding was that he had misappropriated approximately $240,000 of the Plan's funds through

1

a real estate management company Mays operated known as Park Street Properties, LLC. (Doc. 53-7 ¶ 7). Hodges's firm, Hodges & Associates, LLC was retained by Mays' counsel in the criminal matter, Robert DeLaney, to assist in Mays's defense. (*Id.* ¶ 9).

As part of their investigation, Hodges and Jones travelled to Crossville, Tennessee, to obtain receipts and records from Mays. (*Id.*) Hodges and Jones also obtained receipts and records from Ray Mays's brother, Daren Mays. (*Id.* ¶ 10). At this stage they did not attempt to exclude documents unrelated to the Plan; rather, they collected *all* receipts that they were able to locate from both businesses.

The receipts obtained were "voluminous" and not exceedingly well organized. (*Id.* ¶ 12). As part of their investigation, Hodges and Jones organized these receipts by year from 2007 through 2012. (*Id.* ¶ 13). It was these chronologically organized but otherwise unfiltered receipts that were produced in discovery and attached as exhibits to the Hodges Declaration. (*See* Docs. 53-9 through 53-24; 1-ECTN4700-6077). However, Hodges and Jones did not end their investigation at this stage. As Hodges states in his declaration, once the receipts were organized, the investigators undertook "further analysis" to determine whether the receipts supported Mays's claim that the reimbursements were for legitimate expenditures related to Plan properties. (Doc. 53-7 ¶ 14, 16). Jones performed this analysis. (Doc. 53-6 ¶ 16).

Reviewing the complete file of all receipts obtained, Jones matched up payments to Park Street Properties and Upper Cumberland Building Consultants with receipts for expenditures related to Plan properties. (*Id.*). Jones compiled this information into a comprehensive spreadsheet. (*See* 53-8; 1-ECTN4668-4699).

By analyzing the receipts and invoices, Jones was able to match payments from the Plan with receipts related to work performed on Plan properties. (*Id.* at 4-6; 1-ECTN4691-4693). The

2

result was that they were almost perfectly collated. Out of $240,000 in total payments by the Plan to Park Street or Upper Cumberland for the period analyzed, Jones was able to identify $234,000 in matching receipts that were for services or materials supplied by third-party vendors for work done on Plan properties. (Doc. 53-6 ¶ 18). This small discrepancy was well within a reasonable margin of error given the amounts involved. "The difference between the figure asserted by the U.S. Department of Labor and our reconciliation figure is likely attributable to receipts being lost or misplaced over the years." (*Id.*).

Not every receipt collected by Hodges and Jones was attributed to work performed on Plan properties. For 2007, for example, the investigators collected $234,087.84 in receipts. (*See* Doc. 53-9 at 1-6; 1-ECTN4700 – 4705). The summary report prepared by Jones attributes $167,120.58 of these receipts to work on Plan properties. (*See* Doc. 53-8 at 4-6; 1-ECTN4691 – 4693). A similar winnowing occurred for receipts in succeeding years.[1] In sum, although the investigators collected approximately $462,000 in receipts, their analysis revealed that only $234,000 of these receipts were linked to work performed on Plan properties. This number matched the funds that had been transferred to Park Street by the Plan to pay for work performed on Plan properties.

---

[1] For 2008, the investigators collected $70,948.21 in receipts. (*See* Doc. 53-12 at 63-64; 1-ECTN5043 – 5044.). The summary report attributes only $41,711.74 of receipts to work on Plan properties in 2008. (*See* Doc. 53-8 at 5; 1-ECTN4692). For 2009, the investigators collected $66,291.98 in receipts. (*See* Doc. 53-15 at 36-39; 1-ECTN5266-5269). The summary report attributes $14,928.77 of receipts to work on Plan properties in 2009. (*See* Doc. 53-8 at 5; 1-ECTN4692). For 2010, the investigators collected $25,482.40 in receipts. (*See* Doc. 53-18 at 64-65; 1-ECTN5585-5586). The summary report attributes $5,062.18 of receipts to work on Plan properties in 2010. (*See* Doc. 53-8 at 5-6; 1-ECTN4692 - 4693). For 2011, the investigators collected $ 37,239.74 in receipts. (*See* Doc. 53-19 at 51-53; 1-ECTN5673-5675). The summary report attributes $2,798.02 of receipts to work on Plan properties in 2011. (*See* Doc. 53-8 at 6; 1-ECTN4693). For 2012, the investigators collected $27,876.40 in receipts. (*See* Doc. 53-22 at 19-20; 1-ECTN5889 – 5890) The summary report attributes $2,137.25 of receipts to work on Plan properties in 2012. (*See* Doc. 53-8 at 6; 1-ECTN4693).

These findings were presented to the U.S. Attorney's Office. As noted in Defendant's Pre-trial Brief, Mays ultimately pleaded to three counts of failing to disclose information about prohibited transactions in the Plan's IRS Form 5500s. Although the Plea Agreement restricted Mays's ability to serve in a fiduciary capacity, it did not require any restitution of funds to the Plan. As the Plea Agreement specifically noted, "Under ERISA, Maple Leaf, Park Street, and Pit Barbell Club were parties-in-interest to the Plan and the transactions authorized by the defendant were prohibited. However, it appears that the Plan will not suffer any ultimate financial loss in connection with these prohibited transactions." (*See* Doc. 70-2 at 5).

This determination of no financial loss to the Plan was reached by the U.S. Attorney's Office in part because of this extensive documentation demonstrating that the funds spent on the Plan's behalf were properly accounted for and none were diverted to improper uses. Significantly, Mr. Mays was sentenced to two years of probation and a $2,500 fine. No restitution was required. (*See* Doc. 70-3).

**Argument**

**I. The evidence is relevant to the issues before the Court.**

These records and the investigators' analysis are equally relevant to the current litigation, for two reasons. First, the Secretary continues to suggest that all of the "money that Defendants transferred out of The Plan" went "to benefit themselves and their relatives." (Doc. 79 at 3). So, contrary to the U.S. Attorney's Office and the Court in the criminal case, the Secretary sees this as a case of misappropriation of funds. This evidence is a critical part of disproving that allegation. Second, quite apart from whether any of those funds benefitted Defendants personally, the only issue for the Court when it comes to money damages is whether the Plan suffered losses as a result of the prohibited transactions. If the payments to Park Street and

4

Upper Cumberland were diverted to non-Plan uses, the answer would be yes; but if they went to pay legitimate expenses related to Plan properties, the answer is no. Because the records at issue are probative of the fact that the funds were used for legitimate Plan expenses—i.e., to construct and maintain Plan properties—they are highly relevant in determining whether the Plan sustained losses as a result of the payments.

This amply satisfies the legal standard for relevance under Federal Rule of Evidence 602. "[T]he threshold for admitting testimony under Rule 602 is low." *United States v. Kelsor*, 665 F.3d 684, 697 (6th Cir. 2011), *citing United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990). The Secretary has not met the high standard for excluding evidence in limine for lack of relevance. "The court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." *Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)) "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.* (citations omitted). Ultimately, "the test of relevance is very liberal and does not entail a determination of the sufficiency of the evidence." *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1345 (6th Cir. 1992). "Even if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has even the slightest probative worth." *Id.* (citations omitted).

**II. The purpose of this proof is not to contest liability.**

The Secretary claims this evidence would be offered to show "that the Plan's payments to parties in interest Daren Mays and Park Street Properties ('Park Street') were legally permissible pursuant to the exemptions under Section 408 of ERISA," a defense to liability already rejected

5

by the Court. (Doc. 79 at 1). Although this evidence was offered in response to the Secretary's motion for partial summary judgment for liability purposes, it is equally relevant in assessing damages. As noted in Plaintiff's pre-trial brief, "[t]he remedy in an action for breach of fiduciary duty is for the fiduciary to 'make good' *the loss to the plan*. 29 U.S.C. § 1109." (Doc. 78 at 5) (emphasis added). If a prohibited transaction did not cause the plan to suffer a loss, there are no damages flowing from that transaction. "[T]here can be a breach of duty without any 'loss' to a plan." *Donovan v. Bierwirth*, 754 F.2d 1049, 1052 n.3 (2d Circ. 1985). The purpose of presenting the documents gathered by Hodges and Jones is to demonstrate that the money transferred from the Plan to Park Street and Upper Cumberland went to pay legitimate Plan expenses for the construction and maintenance of Plan properties and therefore did not cause the Plan to suffer a loss.

### III. Hodges and Jones are not required to have firsthand knowledge of the underlying transactions.

Plaintiff states that Hodges and Jones should not be permitted to testify as they do not have sufficient firsthand knowledge of the underlying transactions, as required by Fed. R. Evid. 602. (Doc. 79 at 4). The documents are admissible as business records, the foundation for which can be laid by the combined testimony of Mays, Hodges, and Jones. *See* Fed. R. Evid. 803(6); Doc. 53-7 ¶ 11; Doc. 53-6 ¶¶ 16-17. The Sixth Circuit follows the widely accepted rule that third parties can authenticate business records through lay foundation under Rule 803(6) as long as the witness is familiar with the record keeping system. *See U.S. v. Hathaway*, 798 F.2d 902 (6th Cir. 1986).

The summaries prepared by Jones are admissible under Federal Rule of Evidence 1006, which allows a party to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."

6

> This court has interpreted Rule 1006 as imposing five requirements for the admission of an evidentiary summary: (1) the underlying documents must be so voluminous that they cannot be conveniently examined in court, (2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place, (3) the underlying documents must be admissible in evidence, (4) the summary must be accurate and nonprejudicial, and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation.

*United States v. Modena*, 302 F.3d 626, 633 (6th Cir. 2002), *citing United States v. Bray*, 139 F.3d 1104, 1109-10 (6th Cir. 1998).

Defendants can satisfy all of these requirements: The underlying documents are exceedingly voluminous and cannot be easily examined individually in court; Defendants produced copies of the documents in discovery and submitted them in connection with the summary judgment motion (*see* Docs. 53-9 through 53-24); they are records of a regularly conducted business activity and are therefore admissible in evidence pursuant to Fed. R. Evid. 803(6); the summary is both accurate and neutral; and it will be introduced through the testimony of the witness who supervised its preparation.

Hodges and Jones therefore have sufficient firsthand knowledge of the documents (gained through their investigation) to testify in this matter and, where necessary, to authenticate the records they seek to testify about.

### IV. The Secretary's final argument mischaracterizes both the documents and Ray Mays's deposition testimony.

The first mischaracterization is the statement that "Hodges and Jones both swore to Defendant Mays' claim that the attached 1,400 documents demonstrated 'legitimate expenses associated with the Plan's real properties.'" (Doc. 79 at 4). As noted earlier, not all of the receipts gathered by the investigators and produced to the Secretary were for Plan expenses; many were not, and those were not included in the investigators' analysis. The ones mentioned

7

Case 2:14-cv-00115 Document 83 Filed 07/17/17 Page 7 of 10 PageID #: 3601

in the motion, which the Secretary's counsel asked Mays about in his second deposition, were among those excluded from the analysis because they did not reflect expenses incurred on behalf of the Plan. The analysis, incidentally, by accounting for all of the Plan's payments to Park Street and Upper Cumberland, proves what the Plan did *not* reimburse Park Street and Upper Cumberland for as well as what it did reimburse them for. And these are expenses that the analysis shows were not reimbursed by the Plan.

The second misstatement is that "Mr. Mays questioned whether Daren Mays provided accurate records of UCBC's work to Hodges and Jones." (Doc. 79 at 5).[2] The actual testimony is very different. In response to the question "[s]o do you think the records that they received from you brother were accurate?" Mays responded "they were accurate as far as I was concerned or he wouldn't have received any money from me, because he had to bring them." A question as to the accuracy of other records, not involving Plan expenses, was objected to as calling for speculation, and the answer was that any response on his part would be a guess. (Mays Tr. 157-58).

A third misstatement (this time without citation to the record), is that "Mr. Mays was also not able to articulate how these [invoices and receipts involving Park Street or Upper Cumberland] demonstrated that he transferred money from the Plan for legitimate Plan expenses." (Doc. 79 at 5). If the reference is to the cherry-picked examples of obviously non-Plan expenses with which he was "confronted" at his deposition, the answer is that these were not expenses that related to Plan properties or for which Park Street or Upper Cumberland were reimbursed by the Plan, so the inability to articulate a connection was both natural and fully

---

[2] The Secretary cites to the second Mays deposition but did not attach any of the transcript excerpts on which he relies. As a courtesy, Defendants have attached the pages to which the motion refers as Exhibit A.

8

consistent with the purposes for which this evidence is being offered. If the reference is to the expenses that did relate to Plan properties and for which Park Street and Upper Cumberland were reimbursed by the Plan, the statement is completely contrary to everything Mays has ever said about these transactions.

## Conclusion

The Secretary will have an opportunity to challenge the admissibility of this evidence at trial, upon a more fully developed record, which is preferable to excluding broad categories of evidence before there has been an adequate opportunity to lay a foundation and voir dire the witnesses about it. *See Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("Orders *in limine* which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise."). Hodges and Jones are the two individuals best suited to explain their review and analysis of the Park Street and Upper Cumberland receipts in clear and concise detail. Nothing in the record before this Court supports the blanket exclusion sought by the Secretary. The motion should therefore be denied.

Respectfully submitted,

/s/Steven C. Douse
Steven C. Douse (BPR No. 12896)
Kyle D. Watlington (BPR No. 033647)
King & Ballow
315 Union Street, Suite 1100
Nashville, Tennessee 37201
(615) 726-5434
sdouse@kingballow.com
kwatlington@kingballow.com

Attorneys for Defendants Eye Centers of Tennessee LLC, Larry E. Patterson, M.D., and Raymond K. Mays

CERTIFICATE OF SERVICE

  I certify that a copy of the foregoing Defendants' Response to Plaintiff's Motion in Limine to Exclude the Testimony of Dan Hodges and Rick Jones and Related Documents has been served this 17th day of July, 2017, by ECF on:

    Karen E. Mock
    Jean Abreu
    Monica Moulkalif
    Mock.Karen@dol.gov
    Abreu.Jean.C@dol.gov
    moukalif.monica.r@dol.gov
    Atl.Fedcourt@dol.gov

    Robert Delaney
    rdelaney@tewlawfirm.com

    Ed Yarbrough
    Alex Little
    eyarbrough@bonelaw.com
    alex.little@bonelaw.com

            /s/ Steven C. Douse_____
            Steven C. Douse